**Beatrice VAN SLACK, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–580.

United States Court of Veterans Appeals.

Oct. 21, 1993.

Gregory Chandler, was on the pleadings, for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Edward V. Cassidy, Jr., were on the pleadings, for appellee.

Before FARLEY, MANKIN and IVERS, Judges.

IVERS, Judge:

The Clerk's October 1, 1993, action granting appellant's motion to stay proceedings is revoked. The opinion issued on October 12, 1993, is withdrawn.

Beatrice Van Slack, the widow of veteran Bruce J. Van Slack, appeals a February 3, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for the cause of the veteran's death. *Beatrice Van Slack in the Case of Bruce J. Van Slack*, BVA 92–02235 (Feb. 3, 1992). The Secretary has filed a motion for summary affirmance. The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court affirms the February 1992 decision of the BVA.

## I. FACTUAL BACKGROUND

The veteran served in the United States Army from August 18, 1942, to November 24, 1945, when he was discharged from the service because of residuals of poliomyelitis incurred in active duty. R. at 69. On November 26, 1945, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) granted service connection for residuals of poliomyelitis (rated as 100% disabling). R. at 72. On June 1, 1948, the RO reduced the rating to 60% disabling. R. at 81. The rating was increased to 100% disabling, effective February 4, 1983. R. at 103. On April 25, 1990, the veteran was admitted to a hospital and was diagnosed with recurrent squamous cell carcinoma of the larynx and secondary diagnoses of metastatic large cell carcinoma of the lung, chronic obstructive pulmonary disease, and hypertension. R. at 123. The veteran underwent several surgical procedures while at the hospital. *Ibid.* On April 28, 1990, after having taken a walk inside the hospital, he expired. R. at 124. According to a death certificate, the immediate cause of death was listed as cardiopulmonary arrest due to metastatic carcinoma. R. at 105. On July 12, 1990, appellant filed an application for dependency and indemnity compensation (DIC). R. at 108. On September 17, 1990, the RO denied service connection for the cause of the veteran's death. R. at 112. On February 3, 1992, the Board also denied service connection for the cause of the veteran's death. *Van Slack*, BVA 92–02235, at 5.

## II. ANALYSIS

■ The Court reviews the Board's findings of fact under a "clearly erroneous" standard of review. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Ibid.* The Board must base its decisions on "all evidence and material of record," 38 U.S.C.A. § 7104(a) (West 1991), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C.A. § 7104(d)(1) (West 1991); *see Gilbert*, 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Id.* at 57.

■ The surviving spouse of a veteran who has died after December 31, 1956, may file a claim for DIC. 38 U.S.C.A. §§ 1310, 1311 (West 1991). A claim for DIC will be construed also as a claim for death pension and accrued benefits. *See* 38 U.S.C.A. § 5101(b)(1) (West 1991); 38 C.F.R. § 3.152(b)(1) (1992); *Isenhart v. Derwin-*

*ski,* 3 Vet.App. 177, 179 (1992). The veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1992). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1992). A contributory cause of death must be causally connected to the death and must have "contributed substantially or materially" to death, "combined to cause death", or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c)(1) (1992). Therefore, the issue is whether a service-connected disability was a principal or contributory cause of the veteran's death.

In a July 10, 1990, letter to the RO, Dr. Richard Gentile, a private physician who had treated the veteran, wrote:

Mr. Vanslack was treated initially for carcinoma of the lung and later for carcinoma of the larynx with both radiation and surgery as treatment for this. While convalescing from surgery, Mr. Vanslack suffered a cardio-pulmonary arrest which was in part contributed to by his medical infirmities.

I am requested by his family to request that Mrs. Vanslack be considered for continuation of his Veterans payments. The disability Mr. Vanslack suffered from made it more difficult for him to recover from surgery due to problems with ambulation. This probably was a contributing factor in his death and therefore, she should be considered for continuation of benefits on this basis.

R. at 107.

■ This Court has held in numerous opinions that the BVA may not refute the expert medical conclusions in the record with its own unsubstantiated medical conclusions. *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991); *see also Cosman v. Principi,* 3 Vet.App. 503, 506 (1992); *Budnik v. Derwinski,* 3 Vet.App. 185, 187 (1992); *Tobin v. Derwinski,* 2 Vet.App. 34, 39 (1991). In *Colvin,* this Court noted:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § 4009 (1988); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

1 Vet.App. at 175. Thus, while the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more importantly, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision. *Id.; see also Simon v. Derwinski,* 2 Vet. App. 621, 622 (1992).

It is not the function of this Court to speculate on the relationship between a veteran's service-connected disabilities and the cause of his death; rather, it is the function of this Court to decide whether the Board's factual determinations on the issue constitute clear error. [Citations omitted.] In order for the Court to determine whether the BVA's factual findings related to cause of death are clearly erroneous, the Board must ensure that its findings are adequately explained and sufficiently supported by the evidence of record.

*Romeo v. Brown,* 5 Vet.App. 388, 394 (1993).

■ In its February 1992 decision, the Board quoted from a medical treatise which states, in part: "For post polio syndrome, the prognosis is generally good, with only slow progression of further weakness, which may plateau and rarely leads to major increase in disability or death." *Van Slack,* BVA 92–02235, at 5 (quoting 2 CECIL, TEXTBOOK OF MEDICINE,

§ 486, at 2200 (18th ed. 1988) [hereinafter 2 CECIL]. The Board also cited to 38 C.F.R. § 3.312(c)(2) (1992), for the proposition that a service-connected disease or injury "of any evaluation (even though evaluated as 100 percent disabling) but of a quiescent or static nature involving muscular or skeletal functions and not materially affecting other vital body functions" would *generally* "not be held to have contributed to death primarily due to unrelated disability." *Van Slack*, BVA 92–02235, at 4–5. The Board's finding that the veteran's condition is of the type encompassed in the regulation is a finding of material fact and is thus subject to reversal only if clearly erroneous. *See* 38 U.S.C.A. § 7261(a)(4); *Gilbert*, 1 Vet.App. at 53.

Appellant argues that the Board did not provide the entire context of the quotation from the medical treatise. Appellant's Opposition to Appellee's Motion for Summary Affirmance at 2 (Appellee's Opposition). Appellant quotes from the same treatise: "Death in poliomyelitis is usually the result of bulbar involvement and attributable to respiratory and cardiovascular involvement." *Ibid.* (quoting 2 CECIL at 2199). In an addendum attached to her brief, appellant contends that there was an "irrefutable" connection between the effect of the veteran's service-connected polio disability, his walk in the hospital several minutes before he died, and his death. Addendum to Appellant's Br. at 2. Appellant, however, is not capable of testifying as to matters involving medical causation, such as the cause of the veteran's death. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992). Moreover, Dr. Gentile's letter states that the veteran's disability (presumably referring to his service-connected polio residuals) was "a contributing *factor*," but does not indicate a causal connection between the service-connected polio condition and the veteran's death. In the absence of evidence of a *causal* connection between the veteran's service-connected disability and his death, neither portion of the medical text was "relevant to the disposition of this appeal." *Houston v. Brown*, 5 Vet. App. 245, 247 (1993).

Appellant also argues that the veteran's personal physician, Dr. Gentile, "is the best judge of the cause of his death." Appellee's Opposition at 1. This Court has, however, explicitly "rejected the broad application of the 'treating physician rule' that gives the opinions of treating physicians greater weight in evaluating veterans' claims." *Harder v. Brown*, 5 Vet.App. 183, 188 (1993) (citing *Guerrieri v. Brown*, 4 Vet.App. 467, 473 (1993)). The BVA decision in this case is unlike the decision in *Harder*, where the Board gave a treating physician's "diagnoses lesser weight in the face of *no* contrary evidence." *Id.* at 188. As discussed above, the Board provided reasons or bases for its rejection of Dr. Gentile's statement. In addition, the Board noted that the death certificate listing cardiopulmonary arrest due to metastatic carcinoma (R. at 105), was itself prepared by Dr. Gentile, the same treating physician who wrote the July 1990 letter quoted above. *Van Slack*, BVA 92–02235, at 4.

The Court notes that in the addendum to her brief, appellant quotes from a September 1991 letter from Dr. Gentile, which is not in the record on appeal and which was not before the Board at the time of its February 1992 decision. The Court also takes note of appellant's statement that she has additional evidence "to prove that Mr. Van Slack's death resulted from a service-connected disability." Appellant's Opposition at 2. The Court is precluded from reviewing any evidence that was not in "the record of proceedings before the Secretary and the Board." 38 U.S.C.A. § 7252(b) (West 1991); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990).

## III. CONCLUSION

Upon consideration of the record, the Secretary's motion for summary affirmance, and appellant's pleadings, the Court holds that appellant has not demonstrated that the BVA committed either factual or legal error which would warrant reversal or remand. The Court is also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C.A. § 7104(d)(1) and that the Board did not err

in applying the "benefit of the doubt" doctrine. 38 U.S.C.A. § 5107(b) (West 1991); *see Gilbert,* 1 Vet.App. at 53–58.

Therefore, the Court AFFIRMS the February 1992 decision of the BVA.