Citation Nr: 1607940 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-19 236 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUE

Entitlement to service connection for an acquired psychiatric condition.


REPRESENTATION

Appellant represented by: Wisconsin Department of Veterans Affairs


ATTORNEY FOR THE BOARD

Jack S. Komperda, Associate Counsel






INTRODUCTION

The Appellant served on active duty from October 1997 to September 1998.

A February 2008 administrative decision concluded that the Appellant's discharge was dishonorable for VA purposes, but entitlement eligibility still remained for health care benefits under 38 C.F.R. § 3.360. The Appellant did not appeal this administrative decision.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin.

This matter was last before the Board in March 2014, at which time the Appellant's claim was remanded for additional development.


FINDINGS OF FACT

1. The Appellant does not have a diagnosis of posttraumatic stress disorder (PTSD) related to a confirmed in-service PTSD stressor event.

2. The evidence of record weighs against a finding that the Appellant has a psychiatric condition that had its onset during or is otherwise related to his active duty military service.


CONCLUSION OF LAW

The criteria for entitlement to service connection for an acquired psychiatric condition have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Notice and Assistance

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). The duty to notify was satisfied in an October 2008 letter to the Appellant. 

The duty to assist has also been satisfied. The Appellant's available service treatment records, service personnel records, post-service medical records, Social Security Administration records, and lay statements from the Appellant are in the claims file and were reviewed in connection with his claim. The Appellant has not identified any additional outstanding evidence in this matter that could be used to substantiate his service connection claim. 

The Appellant's complete service treatment records are unavailable, as evidenced by a November 2008 memorandum noting a formal finding on the unavailability of service treatment records. VA has a heightened duty to assist the Appellant in developing his claim since the records may have been lost or destroyed by fire. O'Hare v. Derwinski, 1 Vet. App. 365 (1991). The case law does not lower the legal standard for proving a claim for service connection, but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the claimant. Russo v. Brown, 9 Vet. App. 46, 51 (1996).

In December 2013, in accordance with 38 U.S.C.A. § 7109 and 38 C.F.R. § 20.901, the Board obtained a medical expert opinion from the Veterans Health Administration. The Board remanded the claim for further development in March 2014 and is satisfied that there has been substantial compliance with the remand directives. Stegall v. West, 11 Vet. App. 268 (1998). 

The Appellant was afforded a VA examination in February 2015 to assess the nature and etiology of his acquired psychiatric condition, and the report of that examination is adequate to adjudicate his claim. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that VA's duty to assist the Appellant with respect to obtaining a VA examination has been met. 38 C.F.R. § 3.159(c)(4).

The Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Appellant in developing the facts pertinent to his claims.

II. Service Connection

The Appellant seeks service connection for an acquired psychiatric condition he claims is due to active duty service.

Under 38 C.F.R § 17.109 and 38 U.S.C.A. § 1702(b) , any veteran of the Persian Gulf War who develops an active mental illness (other than psychosis) shall be deemed to have incurred such disability in the active military, naval or air service if the disability is developed within two years after discharge or release from active service or before the end of the two-year period beginning on the last day of the Persian Gulf War. In the present case, however, the appellant is not considered to be a Veteran due to the character of his discharge. Moreover, there is no credible evidence of a psychiatric disorder being manifest within two years of service. 

The health-care and related benefits authorized by Chapter 17 shall be provided to certain former service persons with administrative discharges under other than honorable conditions, for any disability incurred or aggravated during active military, naval, or air service in line of duty. 38 C.F.R. § 3.360(a). With certain exceptions such benefits are furnished for any disability incurred or aggravated during a period of service that is terminated by a discharge under other than honorable conditions. However, such benefits may not be furnished for any disability incurred or aggravated during a period of service terminated by a bad conduct discharge or when one of the bars listed in 38 C.F.R. § 3.12(c) applies. 38 C.F.R. § 3.360(b). In making determinations of health-care eligibility, the same criteria will be used as are applicable to determinations of "service incurrence" and "in line of duty" when there is no character-of-discharge bar. 38 C.F.R. § 3.360(c) .

Service connection may be granted for a disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C.A. §§ 1110, 1131. Generally, service connection requires (1) the existence of a present disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Notwithstanding the lack of evidence of disease or injury during service, service connection may still be granted if all of the evidence, including that pertinent to service, establishes that the disability was incurred in service. See 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 503 (1992).

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with VA regulations; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. The applicable regulation requires that the in-service stressor or traumatic event involve actual or threatened death, serious injury, or a threat to the physical integrity of self or others and the person's response involve intense fear, helplessness, or horror. See 38 C.F.R. § 3.304(f).

In adjudicating a claim for service connection for PTSD, the Board is required to evaluate evidence based on places, types, and circumstances of service, as shown by the Appellant's military records and all pertinent medical and lay evidence. Hayes v. Brown, 5 Vet. App. 60, 66 (1993); see also 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.304(f). The evidence necessary to establish the occurrence of an in-service stressor for PTSD will vary depending on whether the Appellant was involved in combat.

At the outset, the Board notes the record does not establish the Appellant's participation in combat. As such, the Appellant's lay testimony by itself is insufficient to establish the occurrence of the alleged stressor. Instead, the record must contain service records or other evidence to corroborate the Appellant's testimony or statements. See Moreau v. Brown, 9 Vet. App. 389, 394 (1996).

The Board observes that effective July 12, 2010, the regulations governing adjudication of service connection for PTSD were liberalized, in certain circumstances, with respect to the evidentiary standard for establishing the required in-service stressor. For cases pending before VA as of that date, the following regulation applies:

If a stressor claimed by a veteran is related to the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, "fear of hostile military or terrorist activity" means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror.

38 C.F.R. § 3.304 (f)(3); see 75 Fed. Reg. 39843 (July 13, 2010).

The Appellant's claims file does not include any service medical treatment records other than his dental records. Some service personnel records are included in the claims file; these relate to the facts and circumstances concerning his discharge under other than honorable conditions for being absent without leave (AWOL) from January 4, 1998 to March 31, 1998. In a July 1998 Request for Discharge in Lieu of Trial by Courts-Martial, it is noted that there did "not appear to be any reasonable ground to believe" that the Appellant was "mentally defective, deranged or abnormal." 

Private treatment records dated as early as October 2005 note psychiatric diagnoses of schizoaffective disorder, bipolar type, polysubstance dependence, anti-social personality and attention deficit hyperactivity disorder. The Appellant's available Social Security Administration records reflect that he has been receiving disability benefits for schizoaffective disorder and antisocial personality. A disability determination and transmittal form notes that the Appellant's disability began on December 27, 2006.

A January 2008 private treatment record from the Walworth County Department of Health and Human Services notes the Appellant had been receiving psychiatric care since December 2006 for diagnoses of bipolar disorder with psychotic features, rule out attention deficit hyperactivity disorder, a history of antisocial personality disorder, and a history of heroin and cocaine abuse reportedly in remission. The doctor wrote that it was "possible that some of the symptoms of his bipolar illness and perhaps ADD emerged during the time of his Army service in 1998." The doctor went onto state that the Appellant requested the statement in order to "observe the possible coincidence of his symptoms with his Army service."

In a May 2010 statement, the Appellant claimed he was hazed about one week into his basic training at Fort Benning. He stated he was made to do PT by two drill sergeants, and he was kicked by them. On another occasion, he claimed that at least four drill sergeants poured warm, salty liquid on him, dragged him outside and told him to leave. Shortly afterwards, he went AWOL.

In June 2013, the Appellant underwent a VA mental disorders examination, where he was noted to have a diagnosis of schizoaffective disorder, bipolar type. The examiner stated this condition represents the Appellant's complaints of paranoia, delusions, disturbed cognitions and affect, and mood swings. The examiner stated that this condition had its onset more likely than not around 2005. The examiner noted there was not good documentation of mental health treatment prior to this timeframe. Further, the examiner noted that the Appellant was receiving Social Security disability benefits for schizoaffective disorder, with the disability beginning on December 27, 2006.

The VA examiner opined that the Appellant's diagnosed schizoaffective disorder, bipolar type, was more likely than not developmental or congenital versus acquired. There was no reliable evidence that the Appellant's time in service caused or contributed to his eventual diagnosis. The examiner further noted it was less likely as not that the Appellant's schizoaffective disorder causally or etiologically related to his period of military service. In support of this conclusion, the VA examiner noted that in the Appellant's extensive mental health treatment records, there was little to no mention of the impact of service on the Appellant's mental health. Instead, the vast majority of records describe the development of the Appellant's schizoaffective disorder, bipolar type, over time, with little to no mention of service playing any role. 

Further, the examiner opined that the Appellant did not demonstrate symptoms or signs of mental health pathology in service, noting that records did not show any evidence of complaints, treatment or diagnosis of a psychiatric condition. Further, there is no indication of mental health complaints, treatment or diagnosis in service. The VA examiner also stated that the Appellant's diagnosed psychiatric condition was less likely than not related to symptoms and signs that may have occurred within one year after his service separation in September 1998. The VA examiner noted that treatment records show the Appellant was seen for substance abuse treatment episodes between February and March 1999, which would have occurred within one year of service. He received no psychiatric care there. There was no diagnosis made and no mention in the records of the Appellant's mental health being affected by his brief service time. The VA examiner noted that the records did not indicate that the Appellant was treated at that time for schizoaffective disorder or any symptoms of this condition. 

In a July 2013 handwritten letter, the Appellant stated that in 1999 he was seen for drug abuse because he was "self-medicating" due to his experiences in service. He claimed that while in service he underwent "psychological experiments" during basic training. The Appellant claimed that he went AWOL "because they know that the experiment didn't work completely on me and they wanted me gone so they threatened to kill me so I went AWOL."

In December 2013, the Board obtained a medical expert opinion from the Veterans Health Administration (VHA) to clarify all psychiatric pathology and to obtain opinions on the etiology of any diagnosed psychiatric disorder. The December 2013 VHA medical expert opinion states an in-person psychological examination was necessary to ensure the Appellant's claimed psychiatric disorder is accurately diagnosed and to provide a fully informed etiological opinion. In response, the Board remanded the Appellant's claim in March 2014, in part, to afford the Appellant another VA examination.

In February 2015, the Appellant was afforded an initial PTSD disability benefits questionnaire. The VA examiner noted that the Appellant did not have a diagnosis of PTSD that conformed to current DSM-V diagnostic criteria. He was, however, noted to have a diagnosis of schizoaffective disorder. 

The Appellant noted two stressors in support of his claim for a PTSD diagnosis. The VA examiner stated the Appellant relayed a "complicated and somewhat convoluted story" in which he was told by his superiors during service that he should not come back. He stated that during basic training he had been getting into fights "because people were 'different than me.'" He stated that after returning from Christmas break, his superiors poured urine on his face, beat him and threw him down three flights of stairs. He was then told to go into town. The Appellant stated he left the next night and never went back. As for the second stressor, the Appellant asserted that while in service he and the unit were made to watch "snuff films" showing American soldiers killing people. The Appellant stated there was a strobe light blinking in rhythm and "trancelike music" playing in a hot room. The Appellant asserted that "they were experimenting on everyone and giving them 30-40 shots." The Appellant stated the experiments did not work on him and he left.

The VA examiner concluded that the Appellant did not meet DSM-V diagnostic criteria for PTSD since the Appellant's reports of PTSD-like symptoms were not related to a verifiable stressor and were instead a component of his delusional system as part of his psychiatric disorder. The VA examiner opined that the Appellant's diagnosed schizoaffective disorder was less likely than not related to military service, with an onset several years after military service. Although the Appellant was reporting symptoms consistent with that disorder while he was in the service, the VA examiner noted there was no documented evidence that he presented with any psychiatric symptoms while in the service. Further it was likely that the Appellant's past perception of his experiences since discharge from the service were notably influenced by his psychiatric disorder and were not credible reports of actual experiences.

The VA examiner went on to state that the Appellant had an extensive psychiatric history involving substantial disturbances of thought, mood, behavior as well as mania, psychosis, and significant substance abuse which has grossly impaired judgment, behavior, and ability to function competently in many settings. The Appellant had been hospitalized at least twice for overdose, as well as for threatening to slit his wife's throat. He has had significant amounts of outpatient therapy, medications, and treatment programs. He has been on multiple medication trials, and his history of substance abuse was extensive, involving almost every drug available. The VA examiner stated that the available records suggest that the onset of the Appellant's schizoaffective disorder was 2005 or later. There was no evidence to indicate that the onset of the condition was during service other than the Appellant's reports of abuse and experimentation during training. The VA examiner stated that it was likely that the Appellant's subsequent self-report of those experiences has been influenced by the later onset of his psychiatric disorder, as there was no evidence he was suffering from that disorder while he was in the service. Further, the VA examiner noted that schizoaffective disorder was not related to environmental conditions but had an organic component.

In a May 2015 statement, the Appellant again repeated his assertions that he had self-medicating behavior within one year of leaving the Army. He indicated that while he has had delusions, "any psychiatrist" would say that PTSD usually follows another mental disorder. He asserted that another prison doctor stated he had PTSD. He noted that his "verifiable stressor" was loud noises and that he cannot be around anyone in a military uniform. He indicated that he has had nightmares, flashbacks, insomnia, and hyper-vigilance.

The Board finds the negative nexus opinion from the February 2015 VA examiner is entitled to great probative weight. The opinion was provided following examination of the Appellant and a review of the claims file. The examiner addressed the Appellant's assertions as to the origin of his psychiatric problems and provided a detailed rationale for his conclusion that the Appellant's diagnosed psychosis disorder was not caused by service. Monzingo v. Shinseki, 26 Vet. App. 97, 105 (2012) (examination reports are adequate when they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion). While a January 2008 private treatment record suggests the possibility that the Appellant's psychiatric problems could be related to service, there is no medical opinion to the contrary in the record concerning the etiology of the Appellant's psychiatric condition.

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence of record is against the Appellant's claim for service connection for an acquired psychiatric condition. The Board acknowledges the Appellant's belief that his psychiatric condition is related to his military service. The Appellant is competent to provide testimony concerning factual matters of which he has first-hand knowledge (i.e., experiencing symptoms either in service or after service). See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007); Washington v. Nicholson, 19 Vet. App. 362 (2005). However, as a layperson without the appropriate medical training and expertise, the Appellant is simply not competent to provide a probative opinion on a medical matter, such as an etiological relationship between any current disability and military service. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Moreover, the Board notes that the Appellant's accounts as to his experiences in service have greatly varied over the course of his appeal. These variations greatly reduce the credibility of his accounts. The Board is persuaded that the more objective medical evidence, which shows that he had no psychiatric symptoms until years after service, has much greater evidentiary value.

In sum, the Board finds that the preponderance of the evidence is against the Appellant's claim seeking service connection for an acquired psychiatric condition. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Entitlement to service connection for an acquired psychiatric condition is denied.



____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs